I represent the seven individual federal defendants in this case, former U.S. Attorney Debra Yang, myself, AUSA's Lee Weidman, David Pincus and Alka Sager, ATF Special Agent Greg Gaioni, and IRS Special Agent Charles Mullally. And if I could, I'd like to reserve five minutes for rebuttal. Thank you. I'd like to start with the allegations in the complaint in this case, because those, of course, pose the framework for the issues that we have to address. And if you look at the complaint in this case, there are two acts alleged. The two acts alleged are an allegedly improper leak of information, and in particular, an improper leak of information relating to the plaintiff's counsel in this case, Mr. Yagman. The second act is the filing with the court of motions for judicial inquiry, asking the court to inquire as to a potential conflict on the part of Mr. Yagman posed by that information. Now, the second act, the district court correctly found the defendants were entitled to absolute immunity. So we are left with the first act. And when we look at the first act, the question is, is there a basis for concluding that that first act, the allegation of that first act, states a violation of a constitutional right that is actionable under Pivens? Now, the leak itself, the law is clear, the leak itself does not constitute a constitutionally actionable violation. So we have to look, as the district court did, to what is the impact of that leak. And the impact, what was alleged to be the violation, what the court ultimately found to be the violation, was that that leak of that particular information resulted in a violation of First Amendment associational rights between the plaintiffs and their attorney. Now, to get there, we obviously need to look at what was the information leaked, because what is alleged is that the information that was leaked had an impact on the plaintiffs that resulted in a violation of that First Amendment right. Now, let's kind of look at what the constitutional right is. There's a constitutional right to have an attorney and not to have the opposition interfere with this attorney-client relationship. You agree with that? I would agree that there is a general right, there's a right recognized under the First Amendment generally to have an attorney assist you in exercising your rights to petition exercise free speech. I don't agree that there is a particular right to a particular attorney. In other words, there is no right to an attorney of your choice under the First Amendment. Well, that might be slightly different, but there is a right not to have an interference in this relationship. Well, by the government. Yes, but does it turn on the government's intent? Now, if the government leaked that information with the intent to interfere with this relationship, then we've probably got a hook on a constitutional claim. So what do we know about the intent of the government? First, I would slightly disagree with the way you phrased that. You can disagree with that, but let's answer my question first. The question is there is an allegation in the complaint that the government improperly leaked that information. That's the extent of the allegation in the complaint, that we improperly leaked that information. I would say that that is not sufficient to make this a constitutional violation, and the reason is exactly what you've identified. For there to be a constitutional violation, even if we put aside the fact that... It does say using it to attempt to disqualify our counsel. And that goes to the second act that was alleged, which was the filing of the motions, which is what the court found we had absolute immunity as to. So I don't think the court can go to that. The court did, but we're here now, and if it's leaked and used to disqualify, if you look at it as one act rather than two separate acts with no relationship, then I have a hard time seeing why that's not a violation. Let me answer that with two answers. First, I don't think you can look at it as one act. If you look at the court's decision in Buckley, the Seventh Circuit's decision, you had essentially the same thing. There was an act, but the act itself, there was an act in which the prosecutors did something wrong. And then there was a secondary act in which that information was brought to the attention of the court or used, and the court found that the first act was not alone sufficient to state a constitutional violation. You had to have the second act. So I don't think you can combine the two acts. But let's put that aside for a moment, and let's say that the court could read those allegations as saying that the government intended. So we'll read that second allegation as going to the government's intent, saying that the government intended to interfere. You still can't have a violation of the First Amendment right, even if we take it as the broad, more general right, which I would suggest is not the case here. We should be looking at the more narrow First Amendment right to counsel of choice, which I would contend doesn't exist. But even assuming we put that aside and look at a broader First Amendment right, you still have to have allegations sufficient to support that there was, in fact, some interference with that right. Because absent some constitutional injury, and this Court's cases have made clear, even under the Sixth Amendment right to counsel in the criminal cases, which I would say is a right that is stronger than the First Amendment right in civil cases. Even under the Sixth Amendment right to counsel in criminal cases, there is no Sixth Amendment injury unless there is, quote, substantial interference or substantial prejudice to that right. And here we have no allegations, not even allegations, of that. We don't have any allegations that there was any interference, nor could we. Mr. Yagler, you said... Is it an attempt to interfere enough? No. And I think this Court's cases make that clear. If you look at Danielson under the Sixth Amendment, if you look at Gonzales v. Lopez, Gonzales-Lopez, a Supreme Court's case that addressed Sixth Amendment rights, differentiating the right to counsel of choice from the right to counsel generally, all of these cases make clear that there has to be a showing of substantial prejudice. And indeed, a case this Court decided just this year, Campbell v. Rice, also recognizes that. There has to actually be substantial prejudice. That is part of the violation of the Sixth Amendment right to counsel. And I would say it is also part of the violation of the First Amendment right to counsel. And I think if you look at the cases that the Court itself cited, Deloach v. Malik, the cases that the Court relied on for its analysis of the First Amendment right, those, too, required a showing of some actual substantial prejudice resulting from that. And we don't even have any allegations of that here, nor could we, because, in fact, A, the defendants weren't deprived of their counsel of choice. Mr. Yagler continued to represent them throughout this proceeding to its completion. And Mr. Yagler has represented repeatedly, including to this Court, in response to an order to show cause that was issued to the government, has responded that he has no conflict and could represent his clients fully and fairly. There can be and there has not been any allegations or any showing of any substantial prejudice that would result in a violation even of the broader right. So that is yet another reason why there simply aren't allegations to support a violation of a constitutional right. Now, I'd like to go back for a moment, if I could, and suggest to the Court that looking at that broader right is not the right way to go, because the information that was, in fact, disclosed was not information that would suggest any effort on the government to interfere with the plaintiff's ability to retain any counsel, but rather was related solely to Mr. Yagler. So even in light most favorable to the plaintiffs, the leak was of information relating to this particular counsel. And, again, if you look at the district court's analysis, it went on. But you're denying that there's any right to have counsel of your choice? In a civil case under the First Amendment, the Sixth Amendment creates a right to counsel of choice in criminal cases, but the Sixth Amendment has no application here. And the First Circuit in Young has specifically looked at this, and the First Circuit in Young said there is no First Amendment right to counsel of choice. That's also consistent with this Court's decisions in cases addressing application of pro hoc vicee rules. In criminal cases where the Sixth Amendment applies and where there is a right to counsel of choice, this Court applies a distinctly different approach to pro hoc vicee rules than it does in First Amendment, in civil cases where there is no such right. So for all those reasons, and that's discussed in more detail in our brief, yes, it's our position there is no First Amendment right to counsel of choice. And, indeed, the First Circuit has specifically so held. Once you have that, if there is no First Amendment right to counsel of choice, then the leak of information relating to the particular counsel with no allegations at all that the government sought to deny the plaintiffs any counsel. Remember, all that happened here is the government is alleged to have leaked the information and then to have filed that information with the court in an effort to have the court inquire as to whether there was a potential conflict on Mr. Yagman's part, if there was, whether that was waived, or if it wasn't waived, whether he had to be disqualified. That's what's alleged here. All that's alleged, in essence, in terms of the leak is that by leaking that information, that information going to the plaintiffs somehow resulted in a violation. And for a number of reasons, that just doesn't make sense. Even if there's a First Amendment right to counsel, people who retain counsel have the right on their own, they have their own right to know information regarding their counsel that might indicate that that counsel has a potential conflict. And, indeed, in Campbell v. Rice, the case that this Court recently decided, Judge Reinhart, in your dissent, you noted exactly such a right, that the defendant in that case had a right to know of the information. And that's consistent with this Court's other decisions that have pointed out that the government has an obligation to bring to the attention of the court. Well, in that case, I would assume, if that's what the government thought, it would have just made a motion without leaking the information. I understand, Your Honor, if we had just made the motion and there isn't the allegation of the leak. Of course, we dispute that we did make the leak. But for purposes of this argument, because we're on the pleadings, I have to assume that. Yeah. So putting that aside for the moment, had we just filed the motions and put the information in it, yes, we wouldn't be here, because we would have absolute immunity for filing those motions. So, again, the case comes back to the leak. But the question is, what was leaked? All that was leaked was information that arguably revealed a potential conflict on the part of Mr. Yagman. To state a constitutional violation, in essence, the plaintiffs have to say, look, we shouldn't have gotten that information. Us getting that information is what constituted a violation of our rights. That simply cannot be true where this Court's case is made clear that the plaintiffs need to get that information. They have to have that information. And, again, I come back to the point, you know, whether the leak was wrong or not, even assuming, look, everybody admits, if, in fact, the government did what the plaintiffs allege, which is leak information in violation of Rule 6E, that would be a violation of Rule 6E. But a violation of Rule 6E is not, in and of itself, constitutionally actionable. So, again, the question is, what is the leak? What's leaked? And how does that affect the plaintiffs' constitutional rights? And, again, what's leaked is only information that demonstrates a potential conflict on behalf of Mr. Yagman. And this Court's case is made clear that the plaintiffs, in this case, they have no constitutional right not to know that their attorney suffers from something that poses a potential conflict. What did the Court say when you made the motion to disqualify? The District Court denied that motion. This Court denied the motion in Montlevy Park. This Court then also issued an order to show cause, asking the United States to show cause, why the appropriate course was not to address Mr. Yagman, but rather to recuse the United States Attorney's Office either from this or the criminal case. And then, after the order to show cause was issued, issued a subsequent order, in which the Court said the order to show cause was discharged, and concluded that both Mr. Yagman and the government could effectively continue to represent their clients, based on their representations, including representations by Mr. Yagman, that he could fully and fairly continue to represent his clients. Thereafter, Mr. Yagman went forward, continued to represent his clients in both cases, which were litigated to their conclusion, which again demonstrates there has been no deprivation of a First Amendment right to counsel, no substantial interference with the relationship, both of which would be required to state a violation of the First Amendment right. So where we end up after all of this is when even if you assume the allegations in the complaint to be true, which again we would dispute, but assuming they're true for these purposes, they don't allege a violation of a constitutional right. That is the first prong of the qualified immunity analysis. There are no sufficient facts alleged to state a violation of the constitutional right. And for that reason, the district court should have granted all seven of the defendants, in this case, qualified immunity. Now, even if we, even if you don't agree with that, there's the secondary prong of Saussure in this qualified immunity analysis, which is, is the right that's alleged to be violated clearly established? And again, even if you conclude, even if you differ with me and conclude that disclosing information or improperly disclosing information that relates to a potential conflict on the part of the plaintiff's counsel with an intent, if you infer an intent to infer, can state a violation of the First Amendment right, there is no case that has suggested that that would be a violation of the First Amendment right. Mothershed, this court's decision in 2005, this court stated that the contours of the First Amendment right to counsel were unclear. In Young, 2005, no First Amendment right to counsel of choice. Even one of the cases relied on by the district court, Denias v. Dunlop, which the court relied on, the district court relied on as part of its First Amendment analysis, the defendant in that case was actually entitled to qualified immunity, found by the court to be entitled to qualified immunity, because the parameters of an individual's First Amendment right, the communications with his attorney, were not clearly defined. And when you couple that with this court's cases that made clear that there was an obligation on the part of the government to raise potential conflicts with the court, I see no way that this court could hold that the alleged constitutional violation here was clearly established at the time this conduct occurred. If there aren't any other questions, I will sit down and await rebuttal. Thank you, counsel. Good morning, Judge Reinhart, Judge Fletcher, Judge Reimer. I'll start off my argument with an aphorism. I was at its brief. State your name for the record, please. Oh, my name's Stephen Yagler. I was prowling a bookstore in Greenwich Village on Sunday, and I came across this little volume, and it interested me because it said Kafka on it, and I'm a fan of Kafka, and I noticed when you opened a little window, there was a picture of Franz Kafka there, so I picked it up, and I had a look at it, and I ended up buying it. And in reading it, I found an aphorism that I thought would be appropriate to start off my argument with, and it's aphorism number 20, and it's as follows. Leopards break into the temple and drink all the sacrificial vessels dry. It keeps happening. In the end, it can be calculated in advance and is incorporated into the ritual. What the government did here is what Justice Oliver Wendell Holmes characterized, I believe, in the Olmstead wiretapping case as dirty business. I may be wrong on the name of the case. I think it's from 1925, but what it's alleged they did here is something that no government official should be doing or should have done. They weren't seeking to communicate with my clients what was going on in my background. If they had sought to do that, they could have done it differently. They specifically leaked the information to a legal newspaper, to a reporter of the legal newspaper named David Houston, who's now its San Francisco editor. And the only discovery that hasn't taken place in this case, because the government has always managed to block it at the last minute by making repeated motions for summary judgment, is taking the deposition of David Houston to find out which of the government defendants leaked the information. There isn't any entitlement to qualified immunity in this case, and the court below, Judge Takasugi, properly ruled under the Denius v. Dunlop case for the Seventh Circuit that the right is clearly established that the government can't interfere with someone's rights under the First Amendment to an attorney, both under the associational clause and under the clause having to do with freedom of speech. I rely on Judge Takasugi's opinions in this case, and there were three of them. I've cited them and quoted from them at length in my brief, and I don't have anything else to say in that regard. What about the government's argument that there must be prejudice in order to be a violation, and that there's no prejudice in this case? That's an excellent question. There's never been a motion for summary judgment in this case. We're here on a motion for judgment on the pleadings, and it's alleged that there was prejudice, I believe, but we just haven't gotten to that stage yet because we haven't even gotten to summary judgment. The plaintiffs believe that there was prejudice, but we haven't had an opportunity to determine that even though we've taken the depositions of all the defendants and even though we've gotten discovery by way of interrogatories from them. I think, first, that there's per se prejudice, that when the government engages in allegedly despicable and illegal conduct and violates Rule 6 of the Federal Rules of Criminal Procedure... You see, there's the rub, because it can be a violation of Rule 6, for which there is a remedy, and still not be a violation of the Constitution. I respectfully disagree. I don't think there really is a remedy for Rule 6. Well, there's contempt. Well, the remedy really lies... Arguably, there would be a tort action. But the question is, is there a constitutional violation? And what is alleged to show that it occurred? So, I mean, let's assume that there is a recognized right to consult counsel and to speak freely with counsel. What is alleged that shows any violation of that right? What was done, specifically, the leak of the information in what we allege was a blatant attempt to affect adversely the right to counsel. And I take the Court's point, but it would seem to me, if arguably there is a right to a tort action, then just as arguably there is a right to a Bivens action, which is a constitutional tort action. Well, yes, but what is the constitutional right that is allegedly violated? Freedom of association. Yes, but there's nothing to show that the right to consult with counsel was affected or the right to speak freely with counsel was affected. Because this case is... What constitutes the constitutional injury? This case is only at the pleading stage. It hasn't even gotten to summary judgment. Well, I understand, but that's what we're here on. So that's why I kept saying, what is alleged, not what facts have been introduced or anything like that. The plaintiffs have not had an opportunity yet to put in that evidence because of the posture. No, the question was, what is alleged in the complaint? That the violation is the conduct of the government and that that conduct affected adversely the rights of the plaintiffs. And if it isn't alleged as specifically as it should have been, then there should be a right to amend the complaint to allege that. The issue here is, is there such a right? And then the secondary issue is, has the alleged violation of that right been sufficiently alleged? If it hasn't, then we should have a right to amend the complaint to allege it in a proper way. No, it's part of the same problem. It's defining the contours of a right, which we've already said is pleasant. And then deciding whether the defendants would have realized that the conduct that they did engage in would run afoul of that prescription. As is argued in our brief, you don't need to have a case directly on point. If the conduct is so apparently wrong, as is a government attorney violating Rule 6, you don't need a case directly on point. Not just Rule 6. So it could violate Rule 6. It could violate a whole bunch of other things. But we're talking about a constitutional violation. That's what I'm trying to just focus on, to get your articulation of exactly what the constitutional right is in your view. Interference with the right of association, in this case with an attorney. But I also put to the court that there need not be necessarily a violation of the Constitution. There also can be a violation of federal law by analogy to 42 United States Code Section 1983. In a Bivens action, what authority do you have that in a Bivens action can lie for anything other than the violation of the Constitution? I don't know as I stand here, but as soon as I get back to my computer, I will do my utmost to find a case that says that. I don't know one off the top of my head, and I had assumed that, and I know that I shouldn't be assuming anything, that I should only be presuming things that have a predicate for the presumption. But addressing directly your question, Judge Reimer, what is the constitutional right? It's the right to freedom of association of counsel without interference from the government. And what I would request this court do is take up the, I don't know if one would call it a hypothetical or a suggestion that was set forth in this court's January 2005 order that's appended as the appendix to this brief and undertake the investigation that this court suggested when it denied the motion to recuse counsel. This court said, and I believe, yes, Judge Fletcher was on the panel, though this is a clerk's order because the order was issued at a time before the identity of the panel could be made known. This order is without prejudice to possible further inquiry and possible imposition of sanctions for inappropriate release of the fact that a pending criminal investigation is ongoing and the inappropriate use of that information. That investigation has never taken place because the only bodies that can do that are the defendants in this case and obviously they're not going to do that, though they did it in both the Balco case and in the Pelicano case when the potential leak didn't involve a leak by somebody working for the government. And I respectfully request that this court appoint its appellate commissioner or special master or some other suitable person to investigate the leak because no one else will have done anything about it. Counsel, your opponent makes a big point of no prejudice here. Was there prejudice? Yes. And can you tell us? Yes, I can. There was discord between our firm and each of the clients. Before the motion was made, the attorney defending the case, David Pincus, who's seated behind me in the audience, sent me a letter and demanded that as an alternative to the government making a disqualification motion that I advise my clients, Darla Motley in the Motley case and Anthony Hart in the Hart case, of what the government alleged was a conflict of interests. And he enclosed a waiver form that he suggested I have those clients sign, though I never responded to him with respect to that because I thought it was not his business and his place to do that. I felt that I had been put in a position and put on notice where I had to communicate that to the clients. I did communicate that to both clients. Both clients, after an arduous time, executed the waivers. And I put those waivers in the file because I didn't want to get caught in between what the government was saying and those waivers. But there was discord with the clients. Both of them were very upset about what happened and both of them questioned the ability of our firm to continue to represent them zealously without, because of the situation that had been disclosed about me, trying to curry favor with the government. So they were both very disturbed by that. They haven't been deposed, I don't think. I mean, I don't remember being at their depositions, but this case has been going on for three or four years. And were discovery taken from them or were an appropriate juncture to come in this litigation for that to happen, they would express that they believed that they were harmed as a result of what happened and at least were subjected to emotional distress as a result of what happened. And eventually they came to the conclusion that what occurred was an outrage. Should you have taken their deposition? Did you have the opportunity? I don't tend, and I don't know that any attorney tends to take the deposition of her or his own client except in a circumstance where there's some reason to believe that the testimony needs to be preserved. There used to be a provision that I think no longer exists under the Federal Rules of Civil Procedure even to take a deposition before an action was commenced. But I think it would be a bad idea, and I'm thinking of it now for the first time. It would have been a bad idea. Well, did you have an opportunity after the suit started? I'm sorry? Did you have an opportunity after this suit started? This was a motion to dismiss. Did you have any opportunity to take discovery after filing a suit? Yes, the discovery that was taken, though, was directed to the defendants, not to my own clients, and the defendants took no depositions of the plaintiffs. I went through the process in the Code of Federal Regulations that one needs to in order to get discovery from certain governmental employee departments. You have to tell them up front what questions you're going to ask and why you want to ask them, and there are a bunch of hoops that you jump through, and I got through all those hoops and got both to send specific interrogatories to get them answered by the defendants and to depose them. What's your allegation in the complaint about prejudice? I can't recall off the top of my head, and in racing to get here from New York for this and going to my office last night to get the file, I found out to my horror this morning that I had left the excerpts of record in one of the other five volumes of this file. It's the only thing I don't have, and that's my fault, and that may hit me in the face, but it's what I did. If there aren't any further questions, I'll sit down. Thank you. Thank you. Counsel, in the motion to dismiss, in the memo in support of the motion to dismiss, did you allege an absence of prejudice? I believe we did. That was one of the bases that we argued there had not been a statement of a constitutional violation, and if I could direct the Court to the amended complaint, the total of the allegations against us are contained in paragraphs 18, 22, and 24 of the First Amendment complaint. It basically repeats the same allegations three times. Now, let me say, you say you believe that you did. Do you know that you did? Yes. We alleged a failure to state prejudice as part of the reason for why there was not. I can check that to make sure, but that is my memory as I stand here. I don't have that motion in front of me, but I'm virtually certain we did, and, of course, I can let the Court know. But I'd like to go back to the complaint for a moment. If you turn to that, and it's at page 9 of the excerpt of records, the sum total is there's an allegation that the defendants participated in, approved of, acquiesced in, and or condoned the unauthorized leak of grand jury information concerning Hart's counsel in the prior action, and then the inappropriate use of the information by A, leaking it to the press for publication, and B, using it to attempt to disqualify Hart's counsel, all constituting an obstruction of justice in a federal proceeding and a violation of Hart's federal rights to exercise his First Amendment associational right and his Fifth Amendment right to due process of law. There is no allegation either that this actually resulted in interference or that it prejudiced them. There are no allegations to the effect that Mr. Yagman has just related to the Court. If that's true, why wouldn't the proper remedy have been to dismiss and permit the filing of an amended complaint? The Court dismissed another of the claims without prejudice, the access to court's claims for ripeness, dismissed it without prejudice, permitting it to be, I guess, amended if it comes back. I would suggest to the Court that that's not an appropriate remedy here because we should be entitled to qualified immunity, because even if you conclude that this is sufficient, that there is an allegation of prejudice, we still get to the final part of the qualified immunity prong, which is, was this right that he alleges clearly established? What I'm trying to get at is to sort of isolate this question and if that were the basis for your victory, say, if that were the basis for upholding the dismissal and you would lose on the other issues. One possibility would be for the District Court to dismiss it without prejudice to him filing an amended complaint in which he alleges prejudice. That would be one possibility. I don't think that's the appropriate choice here because you have to define the constitutional right and once you define that constitutional right on these facts to fit the contours of this case, even if you assume that there's been an allegation of prejudice, as I've said, that right is not clearly established. I'd like to turn to one other thing in that particular context. When there's an allegation that there's a violation of constitutional rights, that just kind of includes within it prejudice, doesn't it? I don't think that's true, and in particular I don't think that's true after the Supreme Court's recent decision in Bell v. Twombly. And Bell v. Twombly basically now says you have to allege facts sufficient to state a plausible claim and says you cannot simply state conclusory allegations. So I do think there is a... if there's any state of facts that could be alleged. I actually think that Bell v. Twombly changes that standard. Bell v. Twombly overturned the statement in Conley v. Gibson that said the court looks to see whether there is no set of facts on which a claim could be stated. Bell v. Twombly says that's not the standard anymore. Bell v. Twombly says now there have to be facts alleged sufficient to state to make out a plausible cause of action. Or that it will be dismissed with prejudice? It will be dismissed. Bell doesn't necessarily deal with whether it should be dismissed with prejudice or without. And I would point out there was a second case I provided you from the Second Circuit which can be read as suggesting that the dismissal should be without prejudice. Well, here it says what the prejudice is, a violation of... Well, it alleges a violation, but it nowhere states what the prejudice is. It nowhere states either that there was any prejudice, what that prejudice was. It nowhere states that there was interference with the attorney-client relationship nor what that interference was. It simply has the conclusory allegation that there was a quote, violation of a First Amendment associational right. Again, that's a pleading issue and I don't think it's pledged sufficiently. But I'd like to get to the bigger issue which is even assuming it's pledged sufficiently and even assuming the court were to conclude that would we be entitled to qualified immunity? And I think we would be both because there is no constitutional rights that's violated here and because it's not clearly established. And with that, I'd like to turn to Mr. Yagman. With that, your time is over. You're over your time already. Can I answer for one minute just to get out one point which relates to something that Mr. Yagman said about Rule 6e? Because, look, he got up and said the government engaged in dirty business here. It violated Rule 6e. That's the allegation. That's the allegation. And I don't disagree. If, in fact, we did that, it would be a violation of Rule 6e. But the cases make clear that for qualified immunity, you look to whether there has been a violation of a constitutional right and whether the government officials knew that their conduct would violate a constitutional right, not whether it's a violation of law and whether they knew that. There are alternative remedies for a 6e violation. You said that government officials who know they're acting illegally and deliberately act illegally should be given qualified immunity. If there is no basis for them to know that their conduct violates a constitutional right. What's the purpose of qualified immunity? Qualified immunity is, again, this is in the Bivens action that subjects individual defendants to constitutional torts. And the theory of qualified immunity is to protect federal defendants where their conduct would not clearly violate, constitute a constitutional right. Qualified immunity should be given to government officials who are deliberately breaking the law and knowingly breaking the law. That's the purpose of qualified immunity, to protect those people? No, that is not the purpose of qualified immunity. I thought the purpose of qualified immunity was to protect officers who may mistakenly engage in illegal conduct. If I may, I think I can answer this by pointing to a couple of cases that the courts have decided that draw this distinction. In particular, in Buckley, the Seventh Circuit case, the allegation was there that the prosecutors had coerced witnesses to make obviously false accusations. The court recognized that that was clearly wrong, and I think nobody would disagree with that. But nevertheless, they were entitled to qualified immunity because no case had indicated that that alone constituted a constitutional violation. And the analysis went down the road to determine whether that, in fact, had resulted in a constitutional violation. This court, in Serrano v. Francis, a case involving a prison disciplinary hearing, recognized that it was clearly established that the person conducting the hearing should have permitted the inmate to call witnesses, and that that was a violation. A violation of what? A violation of rules and regulations, et cetera. Nevertheless, concluded that the levying of punishment, by failing to allow that, it wasn't clearly established that that would result in a violation of the constitutional right occasioned by imposing punishment as the result of denying those witnesses. This Court's decision in Wong v. United States, clear discrimination on the basis of race, ethnicity, religion. Nevertheless, held that was not we would say you shouldn't do that. That's wrong. Nevertheless, held they were entitled to qualified immunity because it wasn't clearly established that despite the fact they did that, it would result in a constitutional violation given the particular person against whom they were acting. So again, that distinction is drawn. Okay. I think that we are now almost five minutes in. And without us again, I thank you for allowing me to go over. Thank you. Thank you. The case just argued will be submitted.
judges: Fletcher, Reinhardt, Rymer